IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30287 |
| | ) | (Chapter 7) |
| MARCUS AND KATHRYN HANSON | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**<u>OPPOSITION TO OBJECTION TO DEBTORS' CLAIM OF EXEMPTIONS</u>**

Come now Kathryn Hanson ("Ms. Hanson") and Marcus Hanson ("Mr. Hanson") (collectively, the "Debtors" or "Hansons," and each a "Debtor"), by and through undersigned counsel, pursuant to Local Rule 9013-1, and in opposition to the Objection to Debtors' Claim of Exemptions (the "Objection," as found at DE #17) filed by Gene W. Doeling, in his official capacity as Chapter 7 trustee of the Debtors' estate ("Mr. Doeling" or the "Trustee"), state as follows:

**I.      Introduction**

The Trustee poses two objections to the exemptions claimed by the Hansons, with one objection implicating a sum likely in excess of $200,000.00 of equity in the Debtors' homestead and the other objection seemingly concerning cash and deposits of less than $5,000.00. The former—and, self-evidently, weightier—objection is well taken but ultimately misplaced, being rooted in a flawed reading of the applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"). The latter objection, by contrast, appears to be a predominately factual assertion of which the veracity, *vel non*, can be ascertained through an evidentiary hearing. Accordingly, for reasons both financial and pragmatic, the majority of this brief is focused on the homestead issue, though the Debtors most certainly do not concede the assertions concerning their proper exemption of cash and bank deposits.

1

The crux of the Trustee's challenge to the Hansons' homestead exemption is that under Section 522(p) of the Bankruptcy Code, the exemption is limited to $189,050.00 since the Debtors recently procured their residence with the proceeds of their former homestead in another state. This contention is errant, however, insofar as the Trustee ignores language making the statutory limitation only applicable in jurisdictions where debtors are presented with a choice between invoking state and federal exemptions, with North Dakota not being one such jurisdiction. The assertion is equally errant insofar as the Trustee overlooks that each of Mr. Hanson *and* Ms. Hanson are entitled to the full $189,050.00 exemption, since the aggregate sum is less than the applicable limit on a Minnesota homestead exemption. With the capped sum doubled, the cumulative allowance of $378,100.00 leaves no equity in the subject residence after accounting for costs of sale and the retirement of secured debt.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Objection be overruled.

**II.    Standard**

The Federal Rules of Bankruptcy Procedure provide, *inter alia*, that within a certain time period (the obedience to which is not instantly at issue), "a party in interest may file an objection to the list of property claimed as exempt. . ." Fed. R. Bankr. P. 4003(b)(1).

The same rules go on to provide, *inter* alia, "[i]n any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). As this Honorable Court has previously observed, "[c]onsistent with the public policy supporting a debtor's right to exempt property, the objecting party carries the burden of showing that an exemption is not properly claimed." *In re Wenstrom*, No. 12-30474, 2013 Bankr. LEXIS 332, at *7 (Bankr. D.N.D. Jan. 28, 2013) (citing Fed. R. Bankr. P. 4003(c)). *See also Grueneich v.*

2

*Doeling (In re Grueneich)*, 400 B.R. 680, 684 (B.A.P. 8th Cir. 2009) ("A debtor's claimed exemptions are presumed to be valid, and an objecting party bears the burden of proving that a claimed exemption is invalid."); *In re Larson*, No. 12-30913, 2013 Bankr. LEXIS 3504, at *2 (Bankr. D.N.D. Aug. 27, 2013) ("An objecting party has the burden of showing that an exemption is not properly claimed.") (citing Fed. R. Bankr. P. 4003(c)).

In assessing whether an objecting party has met the relevant burden, the applicable standard is a preponderance of the evidence. *See In re Slinger*, No. 16-30505, 2017 Bankr. LEXIS 1014, at *8 (Bankr. D.N.D. Apr. 12, 2017) (citing Fed. R. Bankr. P. 4003(c); *In re A'Hearn*, 2011 Bankr. LEXIS 3721, 2011 WL 4704235, at *4 (Bankr. N.D. Iowa Oct. 4, 2011)).

When construing legal questions in the prism of an objection to exemptions, it bears notation that "[e]xemption statutes are construed liberally in favor of the debtor." *In re Slinger*, 2017 Bankr. LEXIS 1014, at *8 (citing *Hardy v. Fink (In re Hardy)*, 787 F.3d 1189, 1192 (8th Cir. 2015) (citing *Wallerstedt v. Sosne*, 930 F.2d 630, 631 (8th Cir. 1991))).

### III.  Relevant Facts

It is believed the following facts are not subject to dispute but, should any dispute arise, the same facts can be established at an evidentiary hearing on the Objection:

1. The Hansons are husband and wife, having been so at all times relevant.

2. The Hansons moved to North Dakota in December 2023, having previously resided—continuously, saving and excepting vacations and ordinary travel—in Minnesota for a period of time well in excess of 910 days.

3. When the Hansons moved to North Dakota, they sold their prior homestead in Minnesota and used the proceeds thereof to acquire a new homestead at the address commonly known as 10160 Concord Drive, Horace, North Dakota 58047 (the "Horace House").

4. The Horace House is the Hansons' primary residence, correlates to the address indicated on their respective drivers' licenses, and is the locale to which they subjectively intend to reside—and remain—for the foreseeable future.

5. The Horace House has an approximate value of $479,000.00 and is burdened by roughly $74,000.00 in debt, resulting in the Hansons having equity in their home of a sum believed to be reasonably proximate to $405,000.00.

### IV. Argument: The $189,050.00 Limitation Set Forth in Section 522(p) is Inapplicable to North Dakota Debtors

Elections are part and parcel of the American theory of democratic governance, as exemplified by the recent flirtations of both North Dakota and Minnesota's leaders with national office. Elections are also part and parcel of Section 522(p) of the Bankruptcy Code, dividing the universe of debtors into two factions: (i) those who are permitted to elect state or federal exemptions and who thusly fall under the purview of this statutory provision; and (ii) those who must utilize state exemptions, without any election whatsoever, and who are thusly outside the purview of this statutory provision. The Hansons fall into the latter category and, as such, are not subject to the $189,050.00 homestead limitation upon which the Trustee relies in his Objection.

#### a. North Dakota's "Opt-Out" Status and Applicability of Minnesota Exemptions

Familiarly, debtors are permitted to elect either state or federal exemptions, except where prohibited by state law. 11 U.S.C. § 522(b)(2). Yet federal exemptions are not permissible in North Dakota. N.D. Cent. Code § 28-22-17 (". . .residents of this state are not entitled to the federal exemptions provided in section 522(d) of the Bankruptcy Reform Act of 1978."). And the federal choice-of-law provision in Section 522 provides that the "opt-in" (or "opt-out") election of the state in which a case is filed—not the state whose substantive exemption laws ultimately impact debtors' assets—controls whether debtors may invoke federal exemptions. *See, e.g.*, *Benn v. Cole*

4

*(In re Benn)*, 491 F.3d 811, 813 (8th Cir. 2007) ("A State, however, may 'opt out' of the federal Bankruptcy Code exemptions set forth in § 522(d). In that case, the debtor may exempt only property that is exempt under federal law other than § 522(d), or state or local law that is applicable as of the date of the bankruptcy filing.") (citing 11 U.S.C. § 522(b)(2); *Owen v. Owen*, 500 U.S. 305, 308 (1991)); *In re Drenttel*, 403 F.3d 611, 614 (8th Cir. 2005) ("The federal bankruptcy statute dictates the applicable exemptions, requiring the debtor to file in the designated district, and stating that the debtor is entitled to federal exemptions or the exemptions provided by the law of the state where the petition is filed. 'This is a federal choice of law in which the choice has been made. That choice is the applicable state exemption law, and in this case the exemption law is [Minnesota]'s statutory homestead exemption. Whatever [Minnesota]'s conflicts of law jurisprudence may be is simply irrelevant.'") (citing 11 U.S.C. § 522(b)(2)(A); *In re Arrol*, 170 F.3d 934, 936 (9th Cir. 1999) (citing *In re Calhoun*, 47 B.R. 119, 122 (Bankr. E.D. Va. 1985))).

This reality is buttressed by the plain language of the Bankruptcy Code. Where a joint case is filed, and the two debtors cannot reach agreement as to whether to invoke state or federal exemptions, federal exemptions are presumed "where such election is permitted under *the law of the jurisdiction where the case is filed*." 11 U.S.C. § 522(b)(1) (emphasis added). So, stated otherwise, joint debtors have a choice in electing state or federal exemptions, but if they are not otherwise in agreement, they are presumed to invoke federal exemptions unless such is forbidden in the state "where the case is filed." *Id*. If such is forbidden in the state where the case is filed, state exemptions *must* be utilized, *id*., even though such exemptions may be those of a state other than that in which the case is filed, 11 U.S.C. § 522(b)(3)(A), and the law of the applicable exemption state might have otherwise allowed for the utilization of federal exemptions.

5

Here, the state law exemptions to be utilized by the Hansons are those of Minnesota, not North Dakota, since the Debtors did not reside in any one state for the 730 days next preceding their petitioning for bankruptcy relief but did reside in the Land of 10,000 Lakes for the 180 days next preceding that 730 day period. 11 U.S.C. § 522(b)(3)(A). So even though this case is properly filed in North Dakota, 28 U.S.C. § 1408, the exemptions the Hansons are required to invoke are those of Minnesota. And although Minnesota law would ordinarily provide a choice between federal and state exemptions, this choice is unavailable because the Bankruptcy Code defers to the filing state on the availability of federal exemptions, even while allowing the exemptions of another state to be utilized in circumstances such as this. So the Hansons have no choice, pursuant to Section 522 of the Bankruptcy Code, but to utilize state law exemptions.

### b. Inapplicability of the Section 522(p) Cap

Under Section 522(p) of the Bankruptcy Code, the Hansons are not entitled to the full $480,000.00 of the Minnesota homestead exemption, Minn. Stat. Ann. § 510.02, if the Hansons (i) acquired their homestead in the 1,215 days preceding the filing of their bankruptcy case, 11 U.S.C. § 522(p)(1); even if the Hansons did so by (ii) using money from the sale of their previous homestead, 11 U.S.C. § 522(p)(2)(B); if (iii) that homestead and the new homestead are not "located in the same State," *id*., and if (iv) the homestead exemption is a byproduct of "*electing* under subsection (b)(3)(A) to exempt property under State or local law. . .," 11 U.S.C. § 522(p)(1) (emphasis added). To be sure, Section 522(p) has other provisions—including one that governs family farmers, 11 U.S.C. § 522(p)(2)(A)—but, on a plain reading of the statutory language, these are the four elements applicable *sub judice*.

The fourth criterion of this test is both conjunctive and unsatisfied instantly, since the Hansons did not "elect" between state and federal law in selecting their exemptions. As noted *supra*, North Dakota prohibits the utilization of federal exemptions, N.D. Cent. Code § 28-22-17,

6

and the Bankruptcy Code does not allow the Hansons to use federal exemptions—even if otherwise permitted under Minnesota law—if such is prohibited under the laws "of the jurisdiction *where the case is filed*," 11 U.S.C. § 522(b)(1) (emphasis added).

The United States Bankruptcy Court for the District of Arizona (which, like this Honorable Court, sits in an "opt-out" jurisdiction where federal exemptions may not be utilized) has confronted a comparable issue where a debtor acquired a homestead within 1,215 days of seeking bankruptcy protection and was thusly potentially subject to a then-extant exemption cap of $125,000.00 under the Bankruptcy Code. *In re McNabb*, 326 B.R. 785, 788 (Bankr. D. Ariz. 2005). Yet the *McNabb* Court held that the cap only applied in states that have not "opted out" of the federal exemptions, noting that "[t]he language is unambiguous in stating that the cap is imposed only 'as a result' of an election, so if there is no election there can be no cap." *Id.* at 789.

Indeed, the word "electing," in Section 522(p)(1), necessarily must have some meaning. The relevant statutory provision reads:

> Except as provided in paragraph (2) of this subsection and sections 544 and 548, *as a result of electing under subsection (b)(3)(A) to exempt property under State or local law,* a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $189,050 in value in—(A) real or personal property that the debtor or a dependent of the debtor uses as a residence; (B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence; (C) a burial plot for the debtor or a dependent of the debtor; or (D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

11 U.S.C. § 522(p)(1) (emphasis added).

In parsing this verbiage, the portion italicized above would be surplusage, and of no cognizable purpose, if the whole of Section 522(p)(1) was intended to be indiscriminately applicable to all debtors. Yet, under a familiar canon of statutory construction, "[c]ourts should avoid interpretations that render statutory terms as surplusage. If at all possible, courts should strive to read the provisions of a statute as harmonious with each other." *In re Rousey*, 275 B.R.

7

307, 316 (Bankr. W.D. Ark. 2002) (citing *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 698 (1995)). *See also Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 476 (2019) (". . . we 'generally presum[e] that statutes do not contain surplusage.'") (quoting *Arlington Central School Dist. Bd. of Ed. v. Murphy*, 548 U. S. 291, 299, n. 1 (2006)).

If the word "electing" is to have any meaning, the language italicized above must not be applicable to all debtors in all cases. Here, "electing" is used by Congress to distinguish a debtor *elects* to utilize state or local exemptions, 11 U.S.C. § 522(p)(1), in contrast to a debtor who *elects* to use federal exemptions. The language does not merely speak to a debtor who "exempts property under State or local law," even though such would be pithier and more concise; the language, rather, is devoted solely to a debtor who "elects" to use exemptions "under state or local law." There must be meaning in this utilization of additional legislative language. And, especially in a democracy where lawmakers find their way to Washington through a proverbial ballot box, it is genuinely difficult to conceive of the word "electing" having a meaning that extends to cases where debtors are not presented with any choice from which to elect. Where, as here, federal exemptions are legally unavailable, there is no election to be made; debtors *must* use state or local exemptions.

Moreover, the provisions of Section 522(p) are intended to address the well-documented and often-expressed concern by members of Congress about the so-called "mansion loophole" through which wealthy individuals could shield millions of dollars from creditors by filing bankruptcy after converting nonexempt assets into expensive and exempt homesteads in one of the handful of states that have unlimited homestead exemptions. *Greene v. Savage (In re Greene)*, 583 F. 3d 614, 619 (9th Cir. Nev. 2009). The legislative purpose behind §522(p) is to prevent debtors from secreting their own assets by transferring them into exempt homesteads. *Id.* However, closing the mansion loophole was not the sole purpose of enacting Section 522(p), and the statute's

8

application is not limited to debtors that have moved from one state to another. *In re Presto*, 376 B.R. 554, 580 (Bankr. S.D. Tex. 2007).

The facts of this case show that the Hansons are not engaging in behavior that closure of the "mansion loophole" was designed to prevent. The Hansons are not wealthy individuals attempting to shield millions of dollars from creditors by converting non-exempt assets into an expensive homestead shortly before filing for bankruptcy. Instead, they are a typical family that moved from Minnesota to North Dakota, taking the proceeds of an already-protected homestead and pouring them into a modest new residence of comparable value. There is simply no indication that they engaged in any of the last-minute asset conversion or improper conduct that Section 522(p) seeks to deter.

In fact, the Hansons' purchase of a reasonably valued home in North Dakota does not suggest any intent to exploit North Dakota's exemption laws, which are notably *less* generous than those of Minnesota. Indeed, if the Hansons were looking to exploit the "mansion loophole," they would have moved to Florida, Texas, the District of Columbia, or another jurisdiction with an unlimited homestead exemption, and bided their time before seeking bankruptcy relief.

So, is it strange to suggest that the $189,050.00 cap is only applicable in states where debtors are permitted to elect between state and federal exemptions? Probably—especially insofar as the federal homestead exemption is a scant $27,900.00. 11 U.S.C. § 522(d)(1). But it is equally strange—if not near-inexplicable from a policy perspective—for the Bankruptcy Code to permit debtors to carry equity from one homestead to another only so long as no state lines are crossed along the way. 11 U.S.C. § 522(p)(2)(B). The "same state" requirement is not only puzzling (especially insofar as Section 522 already addresses any concerns of "exemption shopping" through strategic moves on the eve of filing) but, too, seems to create a capricious geographic

9

disharmony whereby debtors in San Antonio or Fairbanks (cities not particularly close to any state lines) are far less likely to be financially victimized by a short-distance move than debtors in Fargo or the District of Columbia (cities abutting state lines).

Of course, the eccentricities of Section 522(p)—whether in limiting applicability to cases in states that have not opted out of federal exemptions, or in disallowing funds from one homestead to be applied toward another if state lines are crossed in the process—can be addressed by the citizenry through a familiar process. In the admittedly-acontextual words of one Founding Father: "The process of election affords a moral certainty. . ." The Federalist No. 68 (Alexander Hamilton).

### V. Argument: Even if the Limitation is Applicable, Each Debtor is Entitled to the Full Amount Thereof

There is a second—and admittedly less esoteric—reason the Objection should be overruled as to the Horace Home: the Trustee misses that insofar as there are two debtors in this case, the $189,050.00 cap (if applicable) is to be doubled. So even if, *arguendo*, Section 522(p) were applicable to the Hansons, the total exemption would be $378,100.00 and there would only be roughly $26,900.00 in non-exempt equity in the Horace Home. This number is sufficiently slim, relative to the value of the Horace Home, as to raise the prospect that a liquidation would not fetch funds to be made available for distribution to general unsecured creditors after accounting for the costs attendant to a sale of the asset.

Section 522 of the Bankruptcy Code is clear that "[s]ubject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case." 11 U.S.C. § 522(m). As noted by one leading treatise (utilizing a slightly-outdated cap number):

> It is not intended to impose an overall $170,350 cap on the interests both debtors in a joint case may exempt in property under a state homestead exemption. This construction of the statutory language is consistent with the absence in the 2005 Act of any express or implied limitation on section 522(m), which provides that section 522 applies separately with respect to each debtor in a joint case.

10

4 Collier on Bankruptcy P 522.13.[1]

If the Trustee manages to sell the Horace Home for $479,000.00 (which would be a small marvel, insofar as bankruptcy sales often fetch fire sale discounts), a 6% commission split between realtors would amount to $28,740.00, leaving $450,260.00. Payment of the secured creditor would cause another $74,000.00 to be subtracted, leaving $376,260.00. And, as noted *passim*, the Hansons' joint exempt interest in the Horace Home, even assuming application of the Section 522(p) cap, is $378,100.00—a sum in excess of what would remain.

Perhaps the Trustee could negotiate a lower real estate agents' commission, especially in light of recent industry changes. But even if he did so, the foregoing metrics do not account for the additional commission that would be due to the Trustee himself. 11 U.S.C. § 326(a). And, as observed above, these numbers are premised on a full price sale—something that is a marked novelty in the world of Chapter 7 bankruptcy cases; the more discounted the asset becomes, the quicker secured debt and the Hansons' joint exemptions consume the entirety of the Horace Home even if the cap is applicable.

### VI. Argument: It is the Trustee's Burden to Show Cash is Non-Exempt

There is, finally, the question of the Trustee objecting to the cash and bank account deposits held by the Hansons on the date they petitioned for bankruptcy relief. This issue is markedly less complex, and the Hansons have provided the Trustee with an enormous quantity of documents. As

---

[1] Collier goes on to observe that there is some limitation to this concept where state law does not permit a "doubling" of the relevant homestead exemption. *Id*. Such is not a relevant concern *sub judice*, however, because Minnesota law permits an exemption of up to $480,000.00 per homestead, and thusly provides for an exemption in excess of the $378,100.00 realized by each Debtor taking their respective capped exemption under Section 522(m). Minn. Stat. Ann. § 510.02. For want of ambiguity, however, the Hansons are *not* suggesting they would have a right to "double" the Minnesota homestead exemption; they are merely observing that they may "double" the statutory cap, to the extent the cap is applicable, without exceeding the value of a singular invocation of the Minnesota homestead exemption.

noted *supra*, it is the Trustee's burden to prove the cash and the depository accounts are non-exempt. The Hansons do not believe the Trustee can meet that burden, and he does not appear to have done so in the text of the Objection. But the Hansons do, equally, respect that the Trustee will be afforded an opportunity to do so at an evidentiary hearing on the Objection. And should the Trustee meet this burden and prevail, the Hansons will most certainly pay over any non-exempt cash and deposits without further protest or delay, and without the necessity of a turnover motion.

The Hansons have endeavored to be cooperative at every turn of this case. Their counsel notified the Trustee of the filing almost immediately, so as to flag that two operating businesses—neither of which have been exempted, and one of which may hold marked value—were now in his possession. They met with the Trustee, informally, before the meeting of creditors. They provided myriad documents and a wealth of information, especially insofar as the operating businesses are concerned, in a prompt manner. And they continue to do their best to show a cooperative spirit.

Such does not, however, mean that the Hansons will nonchalantly turn over the keys to their beloved homestead. Nor that they are eager to hand over cash and deposits upon which they subside. And it is accordingly urged that this opposition be seen as what it is intended to be: an earnest effort, on the part of two hard-working and fiercely honest individuals, to obtain a fresh start with a roof over their heads and a few dollars in their pocket.

### VII. Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) overrule the Objection; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

                                                          Respectfully Submitted,

Dated: September 3, 2024          By:    /s/ Maurice B. VerStandig
                                                                 Maurice B. VerStandig, Esq.
                                                                 The Dakota Bankruptcy Firm
                                                                1630 1st Avenue N
                                                                Suite B PMB 24
                                                                Fargo, North Dakota 58102-4246
                                                                Phone: (701) 394-3215
                                                                mac@dakotabankruptcy.com
                                                                *Counsel for the Debtors*[2]

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 3rd day of September, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

                                                                /s/ Maurice B. VerStandig
                                                                Maurice B. VerStandig

---

[2] Christianna Cathcart, a recent graduate of the University of North Dakota School of Law, contributed significantly to the researching—and drafting—of this brief. Insofar as Ms. Cathcart is still awaiting bar passage results, she is not yet admitted to practice in this Honorable Court and, as such, cannot formally sign her name hereto. But her efforts merit acknowledgement and it would be insincere to posit this brief is solely the work of counsel of record.

13